IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRUSTEES OF THE NEWSPAPER GUILD INTERNATIONAL PENSION FUND, LINDA K. FOLEY, TIMOTHY J. KELLEHER, BERNARD J. LUNZER, MISSY MILLER, JAMES SCHAUFENBIL, & SHARON CIECHON<br>501 3rd Street, N.W<br>Washington, D.C. 20001<br><br><br>and<br><br><br>THE NEWSPAPER GUILD INTERNATIONAL PENSION FUND<br>501 3rd Street, N.W.<br>Washington, D.C. 20001<br><br>Plaintiffs,<br><br><br>v.<br><br><br>EL VOCERO DE PUERTO RICO, INC.<br>206 Ponce de Leon Avenue,<br>San Juan, Puerto Rico, 00901<br><br><br>and<br><br><br>CARIBBEAN INTERNATIONAL NEWS CORPORATION<br>206 Ponce de Leon Avenue,<br>San Juan, Puerto Rico 00901<br><br><br><br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT** |

## COMPLAINT FOR MONIES DUE
## AND INJUNCTIVE RELIEF

Plaintiffs, Trustees of The Newspaper Guild International Pension Fund ("Trustees"), and The Newspaper Guild International Pension Fund ("Fund" or "Trust" or "TNGIPF"), file this Complaint against Defendants El Vocero de Puerto Rico ("El Vocero"), and Caribbean International News Corporation ("CINC") for monies due, arising from the contractual relationship between the parties, and for appropriate injunctive relief.

This is an action brought pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. Sections 1132 and 1145, and Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. Section 185. Jurisdiction and venue are conferred on this Court by 29 U.S.C. Sections 185(a), 1132(a), (e), and (f). This action arises from the failure of the defendants to submit payment for pension contributions owing under applicable labor contracts, as well as the Fund Agreement and Declaration of Trust, and the Fund Pension Plan, which together govern the employee benefit plan.

## PARTIES

1. Plaintiff Trustees of TNGIPF are Trustees of a multiemployer employee benefit plan established pursuant to Sections 3(3) and 3(37) of ERISA, as amended, 29 U.S.C. Sections 1002(3) and (37). The Trust is established and maintained pursuant to the provisions of the Agreement and Declaration of Trust ("Trust Agreement"), the Pension Plan ("Pension Plan"), and various collective bargaining agreements, including a Collective Bargaining Agreement between La Union de Periodistas, Artes, Graficas y Ramas Arexas ("UPAGRA") and CINC. The

Trust is authorized to sue in its own name by Section 502(d)(1) of ERISA, 29 U.S.C. Section 1132(d)(1). The Trust is administered in the District of Columbia from its Administrator's principal place of business at 501 3rd Street NW, Washington, DC, 20001.

2. Upon information and belief, Defendant El Vocero is a private incorporated employer in the United States Commonwealth of Puerto Rico doing business in Puerto Rico with its principal place of business located at 206 Ponce de Leon Avenue, San Juan, Puerto Rico, 00901. El Vocero is or was engaged at all times herein as "an employer in an industry affecting commerce" as defined in Sections 501(1), (3), and 2(2) of the LMRA, 29 U.S.C. Sections 142(1), (3) and 152(2); Sections 3(5), (9), (11), (12), and (14) of ERISA, 29 U.S.C. Sections 1002(5), (9), (11), (12) and (14); and Section 3 of the Multi Employer Pension Plan Amendments Act of 1980, 29 U.S.C. Section 1001(a).

3. Upon information and belief, Defendant CINC is a private incorporated employer in the United States Commonwealth of Puerto Rico doing business in Puerto Rico with its principal place of business located at 206 Ponce de Leon Avenue, San Juan, Puerto Rico, 00901. Upon information and belief, the Puerto Rican Department of State provided notice, on February 24, 2005, that it intended to revoke CINC's Certificate of Incorporation for CINC's failure to file annual reports for two consecutive years. Upon information and belief, the Puerto Rican Department of State subsequently certified CINC's Certificate of Renewal of the Certificate of Incorporation on July 6, 2005. Under Puerto Rican law, a corporation that files a Certificate of Renewal is treated as if its original Certificate of Incorporation had for all purposes remained in full force and effect during the term when the Certificate of Incorporation was void. Thus, CINC is and was engaged at all times relevant herein as "an employer in an industry affecting

3

commerce" as defined in Sections 501(1), (3), and 2(2) of the LMRA, 29 U.S.C. Sections 142(1),

(3) and 152(2); Sections 3(5), (9), (11), (12), and (14) of ERISA, 29 U.S.C. Sections 1002(5),

(9), (11), (12) and (14); and Section 3 of the Multi Employer Pension Plan Amendments Act of

1980, 29 U.S.C. Section 1001(a).

## THE COLLECTIVELY BARGAINED LABOR CONTRACTS, TRUST AGREEMENT AND PENSION PLAN

4. Defendant CINC is and was at all times relevant to this Complaint bound by a

collective bargaining agreement ["CBA"] with UPAGRA.  CINC is a signatory party to the

UPAGRA CBA, which contains a stated duration date of June 1, 1997 through May 31, 2001.

Pursuant to the express terms of the CBA, all of the contractual terms, including the obligation to

make pension contributions to the Fund, are extended beyond the expiration date and remain

intact until negotiations for a new Agreement are legally concluded.  Negotiations for a new

Agreement to succeed the UPAGRA CBA are currently ongoing.  Thus, CINC's contractual

obligation to submit pension contributions to the Fund remains in effect as negotiations continue.

5. Defendant CINC is also a signatory party to a collectively bargained Agreement

("Agreement") with UPAGRA, dated October 6, 2000, in which it agreed to increase pension

contributions on behalf of covered employees by five dollars ($5) from twenty-five dollars ($25)

to thirty dollars ($30) weekly, effective June 1, 2003.

6. Defendant El Vocero is signatory to a collectively bargained Stipulation Agreement

("Stipulation") with UPAGRA, signed May 6, 2003, which obligates El Vocero to make the

pension contributions to the Fund on behalf of covered employees of thirty dollars ($30) weekly,

effective June 1, 2003.

4

7. CINC and El Vocero, as signatories to the collectively bargained UPAGRA CBA, Agreement, and the Stipulation, are bound to the Trust Agreement and the Pension Plan with regard to their obligations to contribute to the Fund.

8. By the terms of the Trust Agreement, CINC and El Vocero must submit to the Fund the pension contributions required by the UPAGRA CBA, the Agreement and the Stipulation.

9. By the terms of the Trust Agreement, the Fund may also fix, and recover, against any Employer in default, the reasonable rate of interest due the Fund from the date when payment was due under the Plan to the date when payment was made, together with liquidated damages as set forth in ERISA, and all expenses of collection, including attorneys' fees, incurred by the Fund.  The Fund, through its Trustees, may take any action necessary to enforce payment of contributions in default, including, but not limited to, legal or equitable proceedings.  The Fund may also conduct a payroll audit to ensure Defendants' accurate and complete reporting of all contributions owed to the Fund.

10. Under the Pension Plan, the Fund may pursue an ERISA action against an Employer who fails to make required contributions.  Pursuant to the governing documents of the Fund, in any action in which a court awards the Trust a favorable judgment, Employers must pay to the plan, in accordance with the court's award :

     a. the unpaid contributions;

     b. interest on the unpaid contributions, determined at the rate prescribed under Section 6621 of the Internal Revenue Code of 1954, as amended;

     c. liquidated damages equal to the greater of :
          1/ the amount of interest charged on the unpaid contributions; or
          2/ 20% of the unpaid contributions;

d. reasonable attorneys' fees and costs of the action; and

e. such other legal or equitable relief as the court deems appropriate.

## DEFENDANTS' CURRENT DELINQUENCY

11. For the months of November, 2005, December, 2005, and January 2006, Defendants have failed to remit contributions on behalf of covered employees in the sums of **$23,040.00, $27,660.00**, and **$34,200.00** respectively, creating a principal delinquency of **$84,900.00**.

12. Defendants have also failed to pay the Fund accrued interest and collection fees from a separate delinquency in 2004, which the Trust is entitled to receive under the Trust Agreement and Pension Plan. The amounts owed are as follows: accrued interest - $1906.17; accountant's fees - $250.00; and attorneys' fees - $3063.40, for a total of **$5,219.57** in collection costs.

13. The Fund has repeatedly requested, via letter to Mr. Gaspar Roca, President of El Vocero, and President and Resident Agent of CINC, that Defendants comply with their contribution obligation (as well as their obligation to pay interest and collection fees on the 2004 delinquency), and submit the full monies owed the Trust. The Defendants have failed and refused to do so, despite acknowledging such an obligation through the submission of remittance reports.

14. Due to the delinquent contributions for the months of November, 2005, December 2005, and January, 2006, and the delinquent interest and collection fees owed, and pursuant to the governing documents of the Fund, the Trustees have assessed liquidated damages in the amount of twenty percent (20%) of the principal delinquency.

6

## DEFENDANTS' PERSISTENT FAILURE TO SUBMIT
## TIMELY CONTRIBUTIONS

15. Moreover, throughout the course of their relationship with UPAGRA, Defendants have persistently accrued substantial delinquencies to the Trust, requiring Plaintiffs to repeatedly threaten resort to contractual and legal remedies to collect the monies owed.

16. For example, for the months of June through August, 2000, Defendants incurred a delinquency to the Fund in excess of $100,000.00 by failing to make monthly contributions of $33,775.00, $41,450.00, and $32,725.00, respectively. Only upon the threat of impending litigation did Defendants consent, by letter of agreement dated October 20, 2000 ("Letter of Agreement"), to repay this delinquency. Under the Letter of Agreement, Defendants also agreed to make timely future monthly contributions to the Fund.

17. Despite Defendants' obligation, under both the CBA with UPAGRA and the October 20, 2000 Letter of Agreement, to timely submit future monthly payments, Defendants immediately failed to make timely payment of contributions owing for the months of September, October, November, and December, 2000, amassing a delinquency of approximately $139,400.00. Only following further threats of federal litigation from Fund counsel did Defendants submit contributions for the months of September, October, and November, 2000, respectively.

18. Defendants, however, failed to submit the contribution owing for December, 2000, and subsequently failed to submit timely contributions for the months of January and February, 2001. Only after Fund counsel again transmitted a letter threatening litigation, did Defendants comply with their obligation to submit the delinquent contributions.

7

19.  Thereafter, Defendants accumulated a delinquency of $15,185.00 to the Fund for contributions owing for the period of April through August, 2003.  Defendants also submitted no contributions to the Fund for the months of September through December, 2003, accumulating contribution obligations of $39,780.00, $30,300.00, $33,765.00, and $38,880.00 for these months, respectively.

20. In sum, Defendants owed a delinquency of $169,211.76 for the months of April through December, 2003, including accrued interest.  Via letter of agreement, signed by Mr. Roca on February 23, 2004, Defendants agreed to repay this delinquency in six equal monthly installments.  As in the October 20, 2000 Letter of Agreement, Defendants explicitly agreed, consistent with their obligation under the CBA with UPAGRA, to submit all future monthly contributions in a timely fashion.

21.  Nevertheless, Defendants again failed to submit timely contributions of $38,550.00, $30,720.00, $30,540.00, and $37,920.00, respectively, for the months of August through November, 2004, totaling $137,730.00.  Following repeated written demands from Fund counsel to submit the delinquent payments, which included threats of litigation, Defendants submitted to a repayment schedule.  Once again, under the terms of the repayment schedule, Defendants agreed to timely submit future monthly contributions owing to the Fund.

22. Yet Defendants again failed to submit timely contributions for the months of September through December, 2005, of $28,560.00, $35,700.00, and $23,040.00, and $27,760.00 respectively.  Although Defendants ultimately made their September contribution, more than two months delinquent, on January 3, 2006, and its October contribution, also more than two months

delinquent, on February 1, 2006, it ignored a Fund letter of December 7, 2005, demanding full payment of its delinquency to the Fund. Defendant has not paid its contributions for November, and December, 2005, or January, 2006, totaling **$84,900.00**, or the interest and collection fees owing from the 2004 delinquency in the amount of **$5,219.57**.

23. Defendants' flagrant, unremitting history of disregarding their ongoing contribution obligation to the Fund necessitates that they be permanently enjoined from failing and refusing to submit timely contributions as they come due each month. Defendants' liability is plain; it has failed to timely submit monthly contributions owing to the Trust. Defendants' history indicates that, absent issuance of an injunction, it will continue to accrue delinquencies repeatedly, and the Fund and its participants will incur irreparable harm. Defendants will incur no legal harm based on issuance of an injunction because the injunction only requires that it comply with its ongoing contractual obligation - pursuant to the CBA with UPAGRA, the Agreement, the Stipulation, and the Trust Agreement - to submit timely monthly contributions to the Trust. Finally, the public interest favors an injunction to ensure undeniably recalcitrant Defendants' compliance with public law in the form of ERISA.

24. Plaintiffs will serve a copy of this Complaint upon the Secretary of Labor and the Secretary of Treasury by certified mail as required by 29 U.S.C. §1132(h).

## COUNT I - DEFENDANTS' BREACH OF CONTRACT AND ERISA FOR FAILURE TO SUBMIT CONTRIBUTIONS

25. Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 24 of this Complaint.

26. Defendants' failure and refusal to submit the above-referenced amounts and payments to the Plaintiffs violates the UPAGRA Agreement, the Agreement, and the Stipulation, by which they are bound.  Defendants' refusal to submit the required payments to the Trust also constitutes a violation of ERISA.

WHEREFORE, Plaintiffs ask that this Court :

1. Require Defendants:

a. To pay $84,900.00 in contributions for the months of November, 2005, December, 2005, and January, 2006, plus interest and statutory remedies;

b. To pay $5,219.57 in collection costs accruing on a 2004 delinquency as follows:  accrued interest - $1906.17; accountant's fees - $250.00; and attorneys' fees - $3063.40;

c. To submit to a payroll audit for the period of 2003 through the date of the audit, to ensure Defendants' accurate and complete reporting of all contributions owed to the Fund.

d. To pay any additional delinquencies which have accrued at the time of judgment, plus interest and statutory remedies;

e. To pay the Trust liquidated damages in the amount of twenty percent (20%) of the principal delinquency determined to be owed at the time of judgment;

f. To pay the Trust all the costs of collection, including reasonable attorneys' fees and the costs of this action.

2.  Restrain and enjoin Defendants, their officers, agents, servants, attorneys and all

persons acting on their behalf, or in conjunction with them, from refusing to submit timely

payments so long hereafter as Defendants are contractually, or otherwise legally, bound to do so;

and

      3.  Award Plaintiffs such other legal or equitable relief as the Court deems appropriate.

                                    Respectfully Submitted,

                                    /s/
                            _____

                            Barbara L. Camens
                            DC Bar No.  366776
                            Barr & Camens
                            1025 Connecticut Ave. NW
                            Suite 712
                            Washington, D.C.  20036
                            (202) 293-9222
                            (202) 293-6893 (fax)

                            Counsel for Plaintiffs

12